# ERICK T. NELSON v. WILLIAM H. McBRIDE.[1]

May 3, 1912.

Nos. 17,731—(252).

**Election ballot — ascertaining intent of voter.**

Under the election laws of this state, the intent of the voter is the prime consideration in determining for whom his vote is cast; but such intent must be clearly ascertainable from the ballot itself, without indulging in speculation or strained efforts to discover such intent in any other manner than as prescribed by the statutory rules.

**Same.**

Where the ballot on an election for the mayor of a city contained the names of two candidates printed on lines one above the other, and also a third line, in the same order, on which was printed the words "For Mayor,"

[1] Reported in 135 N. W. 1002.

but which contained no name, a cross-mark in the square at the end of such third line was insufficient to indicate an intention to vote for either one of the candidates named.

Erick T. Nelson appealed to the district court for Otter Tail county from the report of the canvassing board which declared that William H. McBride and Erick T. Nelson had each received 603 votes for the office of mayor of the city of Fergus Falls at the preceding election, and the vote being a tie, upon lots being cast, the lot went to McBride, who was declared duly elected. The matter was heard by Nye, J., who made findings and ordered judgment in favor of McBride. Reversed with direction to enter judgment in accordance with the opinion.

*George W. Frankberg,* for contestant.

*G. C. Olmstead,* for contestee.

PHILIP E. BROWN, J.

The parties hereto were rival candidates for the office of mayor of Fergus Falls at the city election held on April 2, 1912. The official canvassers declared the vote to be a tie, and that each of the said candidates had received 603 votes. Lots were drawn, the contestee won, and he was declared duly elected. Whereupon the contestant commenced this contest, which, after a recount of the votes and a trial to the court, resulted in findings and judgment confirming the title to the contestee to the said office; and from such judgment the contestant appealed.

There is no dispute concerning the facts. It was admitted by the parties, and the court found, that at the election 602 undisputed votes were cast for the contestant and 601 for the contestee. Besides these, there were fourteen disputed votes, designated in the record as Exhibits 2 to 15, inclusive, and it was duly stipulated and found that five of these should not be counted for either of the said candidates and that two of them should be counted for the contestant. This finding brought the contestant's total vote on undisputed ballots up to 604, with 601 for the contestee, and left for determination

ónly Exhibits 2 to 7, inclusive, and Exhibit 13. The trial court did not count Exhibit 13 in favor of either party but decided that all of the six ballots, designated as Exhibits 2 to 7, inclusive, were, cast in favor of the contestee, thus giving him a majority of three votes. It is apparent therefore, that if these ballots were excluded from the count leaving out of consideration Exhibit 13, the contestant will have a majority of three votes. The said six disputed ballots were all in form as follows:

| | | |
|---|---|---|
| For Mayor—E. T. Nelson—Nominated by petition | | Vote for one |
| For Mayor—Wm. H. McBride—Nominated by petition | . | |
| For Mayor | x | |

The contest turns on the correctness of the trial court's determination that these six ballots should be counted for the contestee, Wm. H. McBride.

The contestant claims, in substance, that it cannot be determined, from the position of the cross-mark on these ballots, which, if either, of the candidates the electors intended to vote for, and that consequently all of them should be excluded from the count; while the contestee, on the other hand, claims that under the liberal rules established in this state for counting marks on ballots it clearly appears from these six ballots that the voters intended to cast them for him. Both parties rely on R. L. 1905, § 275, subd. 2, and section 302 and subdivision 3 thereof.

Section 275, after providing for choice of presidential electors is as follows: "(2) In all other cases he [the voter] shall place a like mark (X) in the square opposite the printed name of each candidate for whom he desires to vote, and only those so marked shall be counted."

Section 302 is as follows: "All ballots shall be counted for the persons for whom they were intended, so far as such intent can be clearly ascertained from the ballots themselves, and, in determining

such intent, the following rules shall be observed: * * * (3) When a mark (X) is made out of its proper place, but on or so near a name or space as to indicate clearly that the voter intended to mark such name, the vote shall be counted as so intended."

While the exact question here presented has never been decided in this state, the governing rules and the proper construction of these statutes are well established by decisions in analogous cases. Indeed, the provisions of the statute are so very clear that they scarcely need judicial construction in aid of their application, and the cases go more to the spirit in which the statutory provisions should be applied. It has been held, in substance, that our election laws should be construed so as to give every qualified elector the right to have his vote counted as cast, when and only when his intention is indicated by the markings on the official ballot, and such markings and ballots are in substantial compliance with the statute.

In other words, the intent of the voter is the important consideration; but such intent must be clearly ascertainable from the ballot itself, without indulging in speculation or strained efforts to discover such intent in any other manner than as prescribed by the statutory rules. Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500; Hughes v. Upson, 84 Minn. 85, 86 N. W. 782; Bloedel v. Cromwell, 104 Minn. 487, 116 N. W. 947. And while it is true that the legal right to vote, with all of its consequences, should not be hampered by a strict or technical construction of the laws, it is equally essential that the mandate of the majority should not be frustrated by a loose and unwarranted administration of such laws, and public policy demands that the statutes above quoted should not be emasculated by construction.

Viewing the ballots here involved in the light of such statutory provisions and the rules of construction above stated, can it, then, be said that they sufficiently indicate the intent of the voter? Or, in other words, do these ballots indicate with reasonable certainty that it was the intention of the voters to vote for the contestee? We think not. We think that such an intention, if declared, would rest in mere conjecture, and that it is impossible to determine whether the voters

intended to vote for or against either or both of the candidates. It certainly cannot be said that the mark as placed on these ballots clearly indicates the intention of the voter to vote for the contestee, so as to bring them within the saving grace of section 302 of the statute or subdivision 3 thereof. To hold that these ballots must be counted for the contestee would in effect always give the candidate last named on the ballot an advantage, if there were two or more candidates named for the same office; for if, through ignorance, inadvertence, or an intention to vote for none of the candidates whose names are printed on the ballot, the voter should place a cross-mark opposite the blank space below the names, such mark would inure to the benefit of the last-named candidate, regardless of the cause of the mark being so placed. Indeed, a marking like the one under consideration has recently been held insufficient in a well-considered case from another state.

In State v. Acker, 142 Wis. 394, 125 N. W. 952, 20 An. Cas. 670, it was held that a ballot in practically the exact form of those we are considering and marked the same way could not be counted for anyone; the contention in favor of the ballot being aptly disposed of by Dodge, J., in delivering the opinion of the court, at page 397, as follows:

"It is argued that the electors who marked these ballots must be presumed to have intended to vote for one or the other of the two candidates, and that it is a just inference they intended to vote for the nearest name. But is there any presumption or legitimate inference that they intended to vote for either? Each voter placed his mark upon a blank line, where, if he had written another name, it would have indicated an intent to vote for such third person. Why is it not as probable that he made the mark for that purpose, and by omission or confusion failed to write the name? * * * Again, it is not beyond possibility that some or all of these electors chose this method of declaring their disapproval of both names printed upon the ballot."

The Wisconsin statute, moreover, involved in that case, is very similar to ours, and that we subscribe to the language above quoted

has already been indicated in this opinion. Other authorities from other states likewise confirm us in our conclusion. See Flanders v. Roberts, 182 Mass. 524, 65 N. E. 902. In re Flynn, 181 Pa. St. 457, 37 Atl. 523, and the notes in the case of State v. Acker, supra, 20 An. Cas. 670.

The conclusion reached above renders it unnecessary to consider Exhibit 13, and upon such conclusion we hold that the contestant, E. T. Nelson, received a majority of the votes cast at the said election, and that he was duly elected mayor of the said city.

The judgment appealed from is reversed, with direction to enter judgment in accordance with this opinion.