## M. J. GRIMSRUD v. MAY E. JOHNSON AND ANOTHER.[1]

February 13, 1925.

No. 24,606.

**Other ballots may be used in school district elections than those prepared by clerk.**

The provision of section 2799, G. S. 1923, relating to the preparation of ballots by the clerk for the annual school district elections, is *held* directory merely, and voters at such elections using other ballots properly marked should not be disfranchised.

*Headnote 1. See Schools and School Districts, 35 Cyc. p. 876.

M. J. Grimsrud and E. S. Belgum appealed to the district court for Swift county from the action of the canvassing board at the annual

[1]Reported in 202 N. W. 72.

election of Independent School District No. 9 of that county in declaring May E. Johnson and Alice Taylor elected trustees of the district. The appeal was heard by Qvale, J., whose finding is stated in the second paragraph of the opinion. From that part of the judgment decreeing that he did not receive more than 96 votes as against 100 votes cast for each of the contestees, that he did not receive a majority of the legal votes cast and that he was not elected, M. J. Grimsrud appealed. Reversed with directions.

*C. A. Fosnes* and *John C. Haave*, for appellant.

*A. D. Countryman* and *G. M. Hollenbeck*, for respondents.

HOLT, J.

At the July, 1924, annual school meeting of Independent School District No. 9, comprising the village of Appleton, two members of the board of education or school board, were elected for three years. The result was contested. On the appeal by E. S. Belgum and M. J. Grimsrud, the former was held entitled to the office, but not the latter, who appeals from that part of the judgment which decreed that he did not receive a majority of the votes cast at the election. The contestants made no appearance in this court, although notice of the appeal was duly served.

The facts are not in dispute and are these: May E. Johnson and Alice Taylor duly filed as candidates for the office, as provided in section 2799, G. S. 1923. No other person filed. The former then held the office of clerk and, pursuant to said section, she prepared 210 ballots for use at the election, having the names of herself and Alice Taylor printed thereon as candidates with two blank spaces underneath for insertion of names of other persons, should the voter so desire. At the election 195 of these ballots were used, and 74 so-called opposition ballots. The result recorded upon the ballots prepared by the clerk and used by the electors was for Johnson and Taylor each 100 votes, for Belgum 75 and for Grimsrud 57. Seventy-four voters used the opposition ballots upon which the names of Belgum and Grimsrud had been printed with two blank spaces underneath. The result recorded on these by proper mark was 74 votes each for Belgum and Grimsrud. Therefore, of the

total vote of 249 cast, Belgum received 149, Grimsrud 131, Johnson 100 and Taylor 100. This would give the election to Belgum and Grimsrud. But the court found that since 210 ballots were prepared by the clerk and there were 249 voters, only 39 of these could lawfully use the opposition ballots, hence Belgum and Grimsrud must each lose 35 votes of the 74 given them upon the opposition ballots. In other words, a voter could not make use of any other ballot than the one prepared by the clerk until the supply was exhausted.

The law referred to[1] imposes this duty upon the school clerk: "The clerk shall prepare at the expense of the district, necessary ballots for the election of officers, placing thereon the names of the proposed candidates for such office and with a blank space after such names and such ballot shall be substantially prepared as are ballots for general election but without the necessity of having the ballots marked or signed as official ballots." We cannot consider this provision other than as merely directory. The word "shall" does not necessarily indicate a mandatory behest. Dunnell, Minn. Dig. § 8979. The ballots prepared by the clerk need not be marked or signed as official ballots. There is nothing in the law to indicate that the use of ballots so prepared was intended to prevent fraud or illegal voting at school meetings. It seems rather to be designed to facilitate voting and to authorize the expenditures therefor. If intended that only such ballots might be used by the voter, we would have looked for the inclusion of the provision for official marking which was expressly excluded by the law. The right of franchise is an esteemed privilege of a citizen which should not be taken away or be denied, unless the statute regulating its exercise clearly indicates that the voter who has not complied with its essential prerequisites must be barred. Because some officer having to do with the election has not fully carried out what the statutes direct him to do should not disfranchise the voter, if it can be avoided by any reasonable interpretation.

[1]Laws 1917, c. 384.

In this particular instance, there is nothing to indicate that any of the 35 voters whose votes were rejected had an opportunity to use one of the 15 prepared ballots not used, or that when they offered their ballots, which were received without objection, they knew of the existence of any unused ballots prepared by the clerk. Nor is it easy to figure out why 35 votes should be deducted from the 74 opposition ballots cast, rather than 15, for only that number of prepared ballots remained for their use, so far as appears. If only 15 votes were deducted from the 74 given Belgum and Grimsrud on the opposition ballots, both would still have more than Johnson and Taylor. At any rate, of the 249 legal voters, 131 votes were cast for appellant Grimsrud upon ballots properly marked so as to indicate him to be the voter's choice. The law does not in terms prohibit the use of opposition ballots, nor confine the voter to the use of the ones prepared by the clerk, although perhaps an intention is discernable to give candidates who file for the office the advantage gained by appearing as such on the ballots provided by the clerk. We cannot believe the legislature intended to import into the elections of school districts the more strict regulations of the general elections, except as far as some statute to that effect may clearly specify. Mathison v. Meyer, 159 Minn. 438, 199 N. W. 173, holds that the Corrupt Practices Act covering primary and general elections does not extend to the annual school district meetings.

The judgment is reversed with direction to modify the conclusions of law and enter judgment declaring appellant M. J. Grimsrud duly elected a member of the board of education.