## Thompson v. Boling et al.

(Decided September 29, 1931.)

W. D. ASHCRAFT and W. R. GENTRY for appellant.

JAMES & JAMES for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Joseph A. Thompson and W. M. Boling were competing candidates in the August, 1931, Primary Election for the Democratic nomination for the office of Representative from Meade County in the General Assembly of Kentucky.

The canvassing board found that Boling had received a majority of the votes, as counted by them, and thereupon Thompson instituted this proceeding, authorized by the act of 1930, for a recount of the ballots before issuance of the certificate of nomination. Chapter 50, Acts of 1930, p. 53. The circuit court recounted the ballots and reached the same result recorded by the board of canvassers, although counting for each party some ballots rejected by the board. Thompson has prosecuted an appeal. The case turns on a single question, and that is whether 17 ballots rejected by the circuit court and the canvassers should be counted for Thompson.

The official ballot for the Primary Election in Meade county was in this form:

# OFFICIAL PRIMARY
# BALLOT

## DEMOCRATIC PARTY

### For Railroad Commissioner
### First District

MOSES R. GLENN ....................☐

A. W. JONES ..............................☐

S. K. HOLLAND .........................☐

J. C. DUFFY ...............................☐

☐

### Judge of Court of Appeals
### Second District

BEN D. RINGO ........................☐

WESLEY VIC PERRY ...............☐

☐

### Representative of Meade County

W. M. BOLING ...........................☐

JOSEPH A. THOMPSON .........☒

Eight of the ballots in question contained a single stencil cross-mark in the small square after the blank

space immediately below the name of Thompson. One of the ballots contained two stencil cross-marks, one in the square after the space below Thompson's name, and the other in the square after the space below the name of J. C. Duffy.

Five of the ballots were voted correctly for candidates for railroad commissioner and judge of the Court of Appeals, but each was marked in the square after the space below Thompson's name. Two of the ballots were voted correctly for a judge of the Court of Appeals, but were marked in the square after the space below Thompson's name. One ballot was properly voted for a railroad commissioner, but a stencil mark appeared just above and entirely outside the square opposite the name of Ben D. Ringo, and another stencil mark was placed in the square after the blank space below the name of Thompson.

The statute of this state requires the rejection of any ballot from which it is impossible to determine the voter's choice. But it forbids the disfranchisement of any voter because of any technical error in formulating his ballot which does not render it impossible to determine his choice. Ky. Stats., sec. 1471. It is a general rule that when it is clear that the voter has made an honest effort to conform to the directions of the statute as to the manner of voting, although with imperfect results, the ballot should be counted if the intention of the voter can be effectuated.

In this state the undeviating practice has been to search out the purpose of the voter, and if he has manifested his intention by his ballot, it will be given effect.

It is not enough that some possibility defeating the evident purpose of the voter can be conjectured. The rule requires only reasonable probability, and that which was probably intended cannot be said to be impossible of ascertainment. Houston v. Steele, 98 Ky. 596, 34 S. W. 6, 17 Ky. Law Rep. 1149; Little v. Hall, 114 Ky. 231, 70 S. W. 642, 24 Ky. Law Rep. 1060.

In Snowden v. Flanery, 159 Ky. 568, 167 S. W. 893, ballots marked in the square at the end of a blank space below the name of the candidates for sheriff were counted for the names nearest above the stencil marks. A similar ruling was made in Bates v. Crumbaugh, 114 Ky. 447, 71 S. W. 75, 24 Ky. Law Rep. 1205. The circuit judge in an able opinion sought to distinguish these cases upon the ground that the contests there were between party

candidates whose names appeared in separate columns. He said:

> "It was not the naked fact of a ballot voted in the blank line under a candidate's name, and where nothing more appears. But from the position of the mark with reference to the small square, from the physical evidence offered by the ballot itself, the names of opposing candidates appearing alone in separate columns, and the manner of stamping in connection with the general make-up of the ballot, the court was controlled by the clear intention of the voter."

It is difficult to perceive any difference in the purpose of the voter marking below the name of his choice when the candidates were opposite each other instead of one being over the other in a single column. If the voter was attempting to vote for the candidate nearest his mark, it would seem to be wholly immaterial where the name of his opponent might be. It is reasonable to presume that the voter intended to vote for some one, and when he did not register his choice with precision it is a just inference, in the absence of any thing further to show his intent, that he intended to vote for the name nearest his mark. It is too much to surmise that the voter marked the ballot with a stencil and then forgot to carry out a purpose to write in a name, as was conjectured by the court in People v. Morgan, 20 App. Div. 48, 46 N. Y. S. 898. Equally far-fetched and unlikely is the suggestion that the voters chose that method of declaring disapproval of both candidates whose names were printed upon the ballot. State, ex rel. Crain, v. Acker, 142 Wis. 394, 125 N. W. 952, 20 Ann. Cas. 670. The possibility that the voters desired to make no choice between two good men, and therefore stamped below them, as intimated by the circuit judge in this case, loses force in face of the fact that in some instances in the other races the same voters refrained from voting, which was the obvious and unmistakable way to execute such an intention.

There are authorities squarely to the effect that a mark in a square opposite a blank space in a ballot, where nothing more appears, does not constitute a vote for any one. 20 C. J. sec. 187, p. 158.; 9 R. C. L. sec. 131, p. 1132; Hunt v. Campbell, 19 Ariz. 254, 169 P. 596; O'Connell v. Mathews, 177 Mass. 518, 59 N. E. 195; Flan-

ders v. Roberts, 182 Mass. 524, 65 N. E. 902; In re Flynn, 181 Pa. 457, 37 A. 523; In re Ballot Marks, 18 R. I. 822, 27 A. 608; Prenevost v. Delorme, 129 Minn. 359, 152 N. W. 758; Nelson v. McBride (In re Fergus Falls Election), 117 Minn. 387, 135 N. W. 1002; Carwile v. Jones, 38 Mont. 590, 101 P. 153; Crain v. Acker, supra.

But it must be noted that the statutes of the various states upon which those decisions were based were materially different from the statutes of this state. As pointed out in McVeigh v. Sprang, 178 Minn. 578, 228 N. W. 155, 158, the names of the candidates were printed within separate squares with distinct lines, and the statutes allowed a ballot to be counted for a candidate only when it was marked within the block that contained the candidate's names. Cf. Ray v. Registrars, 221 Mass. 223, 108 N. E. 1051, Ann. Cas. 1918A, 1158.

If the election law requires the elector to indicate his choice by a mark, the ballot should be counted if the mark is made anywhere in the space occupied by the name of the chosen candidate, so long as it does not obliterate such name. Vanwinkle v. Crabtree, 34 Or. 462, 55 P. 831, 56 P. 74.

The case of Baken v. Dinsmore, 138 Ky. 277, 127 S. W. 997, is cited by the encyclopedias in connection with the cases just mentioned. But the opinion in that case has no bearing on the point now presented. A voter had marked his ballot in a blank space at the top of the column, but not near any name. It was argued that it should be counted for all the names in the column below the stencil mark, but the court held it could not be counted for anyone. But the authorities are not uniform on that proposition. Howard v. Harrington, 114 Me. 443, 96 A. 769, L. R. A. 1917A, 211; Atty. Gen. v. Bartlett, 75 N. H. 388, 74 A. 877; Stearns v. O'Dowd, 78 N. H. 358, 101 A. 31. Cf. Voorhees v. Arnold, 108 Iowa, 77, 78 N. W. 795.

A painstaking study of the ballots in question in this case constrains the court to the conclusion that they were intended as votes for Thompson, and that the seventeen ballots should be counted for him. We are unable to discern any sound basis for differentiating the decisions in Snowden v. Flanery, supra, and Bates v. Crumbaugh, supra, and the cases from other jurisdictions are not so conclusive or so convincing that our own decisions should be disregarded. It follows that judgment should

346

be entered awarding the nomination for Representative to the appellant, Joseph A. Thompson.

The judgment of the circuit court is reversed, and judgment rendered as indicated in this opinion.

The mandate shall be issued forthwith, but without prejudice to the rights of appellee to file a petition for rehearing. See chapter 50, Acts 1930, at page 160.

Whole court sitting.