## IN RE ELECTION CONTEST.
### EMIL C. ANDERSON AND OTHERS v. WILL FIRLE.[1]

No. 26,731.

April 20, 1928.

**Corrupt practices act does not apply to election of supervisors in townships of less than 5,000 persons.**

The provisions of L. 1912, Sp. Sess. c. 3, known as the corrupt practices act, do not apply to the election of township officers in townships containing less than 5,000 population.

Elections, 20 C. J. p. 185 n. 43.

Proceeding instituted by 25 voters of Bandon township, Renville county, pursuant to G. S. 1923, § 570, to contest the election of Will Firle as supervisor of said township on the ground of a violation of the corrupt practices act. From a judgment, Baker, J. ousting him from office and declaring the office vacant, the contestee appealed. Reversed.

*L. J. Lauerman,* for appellant.
*Murray & Baker,* for respondents.

HOLT, J.

Appeal by a duly elected township supervisor from the judgment of the district court ousting him from office in an election contest on the ground that he had violated the corrupt practices act.

This court requested counsel to brief the question whether the act mentioned covers the ordinary township elections. The briefs have been furnished. In Miller v. Maier, 136 Minn. 231, 161 N. W.

[1]Reported in 219 N. W. 284.

513, 2 A. L. R. 399, the act was applied to the election of a town supervisor. But neither court nor counsel there questioned its applicability. However in Mathison v. Meyer, 159 Minn. 438, 199 N. W. 173, it was suggested that Miller v. Maier should not be taken as an adjudication of the matter, and the elections in school districts were held not subject to the regulations of the corrupt practices act. Much of what was there said as to the character of school meetings may be said in respect to town meetings.

L. 1893, p. 16, c. 4, was practically a new code governing elections under the Australian ballot system. It contained various provisions to be observed by the voters as well as by the persons who conduct the elections, and penalties for violations were prescribed. Section 199 thereof reads:

"This act shall apply to all general and special elections in the state of Minnesota, except township and village elections, and shall be known as the general election law of the state."

The first corrupt practices act was L. 1895, p. 664, c. 277, and § 25 thereof read:

"This act shall not apply to village, township or school district elections."

R. L. 1905 scattered and rearranged not only the provisions of L. 1895, p. 664, c. 277, and amendments thereto, but also the general election code of 1893 and the amendments thereto, into c. 6 under the headings or titles ELECTIONS, CORRUPT PRACTICES, and PENAL PROVISIONS. It is perfectly clear that none of the provisions grouped under ELECTIONS pertain to the election of town officers, for R. L. 1905, § 343, reads:

"The foregoing provisions of this chapter shall not apply to elections of town officers, nor, except those relating to the arrangements for voting at the polls and the preservation of order thereat, to village elections."

Johnson v. Slapp, 127 Minn. 33, 35, 148 N. W. 593, held that the "Australian ballot system does not apply to a town election." The

fair inference is that the immediately following part under the title
CORRUPT PRACTICES was intended to embrace only acts and omissions
touching the elections governed by the preceding parts of the chap-
ter. The revision commission did not place all of L. 1895, p. 664,
c. 277, under the title CORRUPT PRACTICES, but a great many provi-
sions not specially applicable to the use of the Australian ballot
system were placed under the title PENAL PROVISIONS. Whether the
latter, such as those against bribery and the like, can be invoked to
secure the purity of all elections, including town and school elec-
tions, is not now necessary to decide, for the acts of which appel-
lant was found guilty violated the provisions found under the title
CORRUPT PRACTICES in G. S. 1923, §§ 538-579, being L. 1912, Sp. Sess.
p. 23, c. 3. R. L. 1905 were not intended to alter or abrogate exist-
ing election laws, for the commission in reporting the revision to
the legislature indicated no purpose to make any change therein.
So we take it, so far as these laws were concerned, there is merely
a rearrangement and condensation, when possible, without chang-
ing the meaning. Salmon v. Central Tr. & Sav. Bank, 157 Minn.
369, 196 N. W. 468. Because of § 343, the commission and the legis-
lature might well have assumed that there was no need of embody-
ing § 25 of L. 1895, p. 664, c. 277. R. L. 1905, § 343, is
G. S. 1923, § 495. The latter compilation contains the same general
election laws as the Revised Laws, with subsequent amendments
and additions, including L. 1912, Sp. Sess. p. 4, c. 2; and c. 3 of the
same session is the corrupt practices act now in force, taking the
place of that part of the act of 1895 which in R. L. 1905 was found
under the title of CORRUPT PRACTICES. The act of 1912 made no
change in that part of the act of 1895 which the revision had placed
under the title PENAL PROVISIONS. (L. 1912, Sp. Sess. p. 23, c. 3,
§ 43.)

It is clear that the election laws preceding the title CORRUPT
PRACTICES in G. S. 1923, c. 6, do not apply to the election of town
officers, for § 495, as stated so specifically provides. These laws
only fit elections where the so-called Australian voting system is
made obligatory. And it is safe to say that the legislature by

L. 1912, Sp. Sess. p. 23, c. 3, intended to define the practices which under that system of voting should be considered corrupt or wrongful. Many of the acts or omissions therein defined as corrupt could not possibly occur in the election of township officers, where there are no nominations, no official ballots, no provision for filing expense accounts, and no specific formalities called for. The other definitions which by any possibility might be made to apply to town elections are so few that it ought to create doubt of legislative intention to apply them to a town meeting with its elections. It is a general rule that penal statutes must designate the proscribed acts or omissions so definitely and clearly that no difficulty is encountered in determining whether a given act or omission offends the statute. Street v. C. M. & St. P. Ry. Co. 124 Minn. 517, 145 N. W. 746; Gutterson v. Pearson, 152 Minn. 482, 189 N. W. 458, 24 A. L. R. 519, and the cases cited in both opinions.

The origin of town meetings, the practice of holding them at times far removed from the general national, state and county elections, the few formalities imposed upon their conduct, and the long continued policy of permitting small rural communities, townships, to carry on their internal affairs, including their selection of town officers, with the greatest freedom, all lead to the conclusion that the legislature has not as yet brought the township elections under the corrupt practices act. This is also indicated by the fact that legislatures subsequent to the one of 1912 have assumed that the act did not apply to town elections. When in 1913 the legislature by c. 210, p. 268, extended the Australian ballot system to towns having a population of 5,000 or over, § 3 thereof carried with it the penal provisions applicable to the general elections. (G. S. 1923, §§ 1136-1138.) And when, by L. 1915, p. 451, c. 315 (G. S. 1923, §§ 1139-1142), the towns and villages, without regard to the density of population, were granted the privilege of adopting the Australian ballot system in the election of their officers if they chose to do so, by resolution or ordinance, the last section of that act makes the penal provisions of the general election laws applicable to the villages so adopting, but not to the towns.

We recognize the rule that one legislature is not the interpreter of the laws enacted by a prior legislature. Bingham v. Bd. of Supervisors, 8 Minn. 390 (441) ; Levy v. Industrial Finance Corp. —— U. S. ——, 48 S. Ct. 298, 72 L. ed. 338. However, when two legislatures by legislation in respect to town elections have deemed the prior corrupt practices act not applicable thereto, courts may well hesitate to hold persons elected thereat subject to its drastic regulations and penalties, when the language thereof no more definitely or clearly embraces them than does this act. There is no suggestion that this township had adopted the Australian ballot system. The inference is to the contrary, for there was no primary.[1]

The only matters in the corrupt practices act of 1912 which point to the inclusion of town elections are these: We find among those officers to be nominated and elected whose maximum expenses are fixed "town officer" (§ 5, subd. 6) ; and in § 40, subd. 6 "election" in the act "shall mean and include all general, special or other elections, provided for under the general election laws of the state, or under the election laws governing any election in any district, county, town, city, village or other municipality therein." The last part of the last sentence is the only portion which has any bearing. And that might as well apply to school district elections as town elections. But we have held the corrupt practices act inapplicable to the former. Mathison v. Meyer, 159 Minn. 438, 199 N. W. 173. The act of 1912 deals so patently with the national, state, county and city elections under the Australian ballot system that there should be no forced effort to subject the school and town meetings and elections provided for by other statutes to its provisions. In so far as towns function as election districts or precincts at the general or special elections fixed and regulated by G. S. 1923, c. 6, preceding the title CORRUPT PRACTICES, the provision of L. 1912, Sp. Sess. p. 23, c. 3, of course applies. Further, the wording of § 35 of the act of 1912 (G. S. 1923, § 572) also excludes town officers from the contest authorized by §§ 33 and 34 thereof (G. S. 1923, §§ 570, 571). So far as here pertinent it reads:

[1]See explanatory statement on p. 339, infra. [Reporter.]

"Any proceeding under this act contesting any nomination or election must be commenced within ten days after the day of the primary or thirty days after a general election," etc.

There is no primary at a town meeting unless the town has adopted the Australian system of voting, and even so that contest of a primary election could not well be held in time; and the town meetings held in the spring annually for the transaction of the town business and the election of town officers are not known or designated as "general elections" in G. S. 1923, c. 6, nor so far as has come to our attention anywhere else in the statutes. We therefore are of the opinion that the corrupt practices act, L. 1912, Sp. Sess. p. 23, c. 3, does not apply to the election of supervisors in a township having less than 5,000 population.

In view of the foregoing conclusion there is no occasion to review the findings, for the act of conveying a voter to a town meeting violated no law, nor did the distribution at the place of voting of so-called caucus ballots transgress any statute relating to the election at town meetings.

The judgment of ouster is reversed.

UPON PETITION FOR REARGUMENT.

On May 11, 1928, the following opinion was filed:

PER CURIAM.

The petition for rehearing is based upon State ex rel. Village of Excelsior v. District Court, 107 Minn. 437, 120 N. W. 894, not cited by counsel in the briefs and overlooked by the court. That case merely holds that R. L. 1905, § 336, permits contests in village elections, although that is in apparent conflict with § 343 thereof. This conclusion was arrived at because § 336, enacted subsequent to § 343, controlled. Section 336 came into existence by L. 1901, p. 584, c. 365, whereas § 343 was enacted by L. 1893, p. 16, c. 4, § 199. Section 336 appears as G. S. 1923, § 488, and perhaps is still available for contests of town elections. But that does not signify that the corrupt practices act of 1912 and the contest therein provided for

applies to and governs town meetings and the election of town officers. The decision made is adhered to.

From an unguarded statement in the opinion it might be inferred that where a town adopts the Australian system of voting there is a primary election for town officers.[1] The law, L. 1915, p. 451, c. 315, provides there shall be no primary, but as a substitute prescribes that candidates file affidavits of candidacy at least one week before the election.

The motion for rehearing is denied.

[1]See p. 337, supra. [Reporter.]